UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DAVID ALAN TAYLOR,

               Plaintiff,                Case No. 2:12-cv-137

v.                                        Honorable Robert Holmes Bell

CATHERINE BAUMAN,

               Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee**.** Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff David Alan Taylor, an inmate at the Chippewa Correctional Facility (URF), filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names Warden Catherine Bauman, Corrections Officer Unknown Sjoholm, and Corrections Officer J. Gleason as Defendants in his complaint. Plaintiff arrived at the Alger Maximum Correctional Facility (LMF) on July 17, 2009, and was assigned to work in the Food Service Department on August 1, 2009. From August 1, 2009, until June or July of 2010, general pat down searches were conducted on food service workers upon leaving their job assignments.

Plaintiff claims that beginning in either June or July of 2010, Defendant Bauman initiated a policy which required food service staff to conduct body cavity strip searches on all inmate kitchen workers, including Plaintiff, as they were leaving their kitchen assignments. The purpose for the searches was to prevent the smuggling of food items, such as sugar and tomato puree, which inmates had been using to make an intoxicating beverage known as "spud juice." Inmates drink the spud juice, become intoxicated, and cause security problems, such as assaults on other inmates and staff.

Plaintiff was subjected to these searches until he was terminated from his job assignment on September 9, 2010. On March 12, 2011, Plaintiff was reassigned to work in the kitchen and was again subjected to body cavity searches upon leaving his job assignment. This continued until August 31, 2011, when Plaintiff was again terminated from his job in the kitchen. Plaintiff states that the strip searches were conducted by two Corrections Officers on the back dock in a large enclosed area by two big steel doors and a large window. Plaintiff asserts that the doors were often open so that people in the hallway could see in through the doors and the window. Once

the inmates stripped, they were instructed to open their mouths and to spread their buttocks while bending over.  Then they were allowed to dress again.  Plaintiff states that the whole process took between three and five minutes.  Inmates who refused to be strip searched were given a misconduct ticket and were terminated from their job in the kitchen.  Plaintiff states that many of the Corrections Officers who conducted the searches made humiliating and derogatory comments.  In particular, Plaintiff states that Defendant Sjoholm and Defendant Gleason made lewd remarks to Plaintiff, to the effect that he liked spreading his buttocks and that he was probably and "old freak."  After about one month, the spud juice related incidents ceased and inmates began to complain that there was no longer any need for strip searches.

Plaintiff alleges that some of the Corrections Officers who were assigned to the kitchen did not like conducting the strip searches and told Plaintiff that the warden wanted it done in order to make the kitchen workers pay because of prior assaults on staff.  On August 10, 2010, Plaintiff sent a memo to Defendant Bauman complaining of the strip searches.  On March 22, 2011, Plaintiff sent a second memo to Defendant Bauman arguing that the strip searches were unnecessary because the Corrections Officer could simply pat search kitchen workers.  Moreover, Plaintiff stated that kitchen stewards put items away under lock and key, so that they could not be stolen.  On August 3, 2011, Plaintiff sent a complaint to Defendant Bauman regarding the comments being made by Defendants Sjoholm and Gleason during the strip searches.  Plaintiff did not receive a reply to his complaint.

Plaintiff claims that Defendants' conduct violated his Fourth and Eighth Amendment rights and is seeking compensatory and punitive damages.

## Discussion

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that the strip searches violated his rights under the Eighth Amendment. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.* Prisoners may be strip searched under circumstances that are reasonably related to the legitimate penological interest of security and order. *See Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. Dec. 15, 2003) (citing *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992)).

Plaintiff's claim fails because it is clear from his allegations that there was a penological justification for the strip searches of kitchen workers and, thus, the measures were constitutionally permissible. Plaintiff, along with all inmate kitchen workers, were strip searched in order to prevent inmates from smuggling sugar and tomato puree from the kitchen because these items were used by inmates to manufacture "spud juice." Plaintiff concedes that inmates drunk on spud juice had previously assaulted other inmates and staff, which obviously created a security concern for prison officials. Furthermore, the strip searches were restricted to kitchen workers who

were leaving their job assignments to return to their units.  Accordingly, the strip searches did not violate Plaintiff's Eighth Amendment rights.

Moreover, Plaintiff does not even suggest in his complaint that he was subjected to any physical injury whatsoever as a result of the strip searches.  Rather, Plaintiff claims a mental or emotional injury as a result of the incident.  Title 42 U.S.C. § 1997e(e) precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Sixth Circuit repeatedly has held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury.  *See, e.g.*, *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *Merchant v. Hawk-Sawyer*, No. 01-6244, 2002 WL 927026, at *2 (6th Cir. May 7, 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Robinson v. Corrections Corp. of America*, No. 99-5741, 2001 WL 857204, at *1 (6th Cir. June 20, 2001); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *2 (6th Cir. June 7, 2001); *Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459 (6th Cir. Sept. 2000); *Raines-Bey v. Garber*, No. 99-1471, 2000 WL 658721, at *1 (6th Cir. May 12, 2000).  Because Plaintiff does not allege that he suffered a physical injury, there exists no predicate for his emotional distress claim.

Plaintiff's claim regarding the strip searches also implicates his Fourth Amendment rights.  In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court held that visual body cavity inspections during strip searches of pre-trial detainees and convicted prisoners after they had contact with outsiders were not "unreasonable" searches under the Fourth Amendment.  The searches were conducted at the "federally operated short-term custodial facility in New York City designed primarily to house pretrial detainees."  *Id.* at 523.  The Court stated that applying "[t]he test of

reasonableness under the Fourth Amendment . . . [i]n each case . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. It pointed out that a "detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Id.*

As discussed above, Defendants had reason to believe that kitchen workers were smuggling ingredients for spud juice out of the kitchen at the end of their shifts. Under the circumstances, it was entirely reasonable for Defendants to authorize strip searches to prevent this from occurring. In addition, the fact that there ceased to be problems with spud juice after the practice of strip searching kitchen workers was instituted merely indicates that this was an effective way to deal with the problem. Contrary to Plaintiff's assertion, this does not demonstrate that strip searching prison workers was no longer necessary or reasonable. Plaintiff, therefore, fails to state a claim under the Fourth Amendment.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>April 30, 2012</u>                    <u>/s/ Robert Holmes Bell</u>
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE